[No. F010284. Fifth Dist. Dec. 14, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMON ERIC GRIGGS, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I A, II, III and IV.

**COUNSEL**

Robert Valencia, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and J. Robert Jibson, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**VARTABEDIAN, J.**—Defendant Raymon Eric Griggs appeals from the judgment entered following his jury trial convicting him of assault with a deadly weapon (count I; Pen. Code, § 245, subd. (a)(2)),[1] discharging a firearm at an occupied motor vehicle (count II; § 246), and carrying a concealed weapon on his person (count III; § 12025, subd. (b)). In addition, it was found as to count I that defendant personally used a firearm during the commission of the crime (§ 12022.5). Defendant contends the trial court erroneously denied his section 1118.1 motion for judgment of acquittal, his motion for mistrial based on prosecutorial misconduct, and his motion to

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

suppress his statement made while in police custody. He alleges further that the court erroneously sentenced him to serve a concurrent term for count II.

## FACTS

On the evening of October 2, 1987, Officer Mark Grimm of the Bakersfield Police Department was assigned to patrol the parking lot area of Civic Auditorium. An LL Kool J "rap" concert was being held at the auditorium that night. Grimm was in an undercover vehicle and was not in uniform. The crowd began emerging from the auditorium at about 11 p.m. Many among the crowd were running and others were in their cars attempting to exit the congested parking lot. Officer Grimm heard a gunshot. He turned toward the direction from where he thought the sound came. He saw defendant crouched at the rear of his vehicle. Defendant put his right hand into an object in his left hand and pulled out a revolver. Defendant fired at least two shots from the revolver into a large crowd of people and several vehicles trying to leave the parking lot.

Defendant walked past Officer Grimm's vehicle with a gun in his right hand and a white towel in his left hand. Grimm broadcast a description of defendant over the radio. He watched defendant and then saw a patrol car driving near him. After observing this, Officer Grimm went looking for another suspect.

Officer Orbin Love and Officer William Rector stopped defendant because he matched Officer Grimm's description. Defendant did not have a gun nor did he have a white towel in his hand. Officer Stanley Mosley instructed Officers Love and Rector to let the defendant go because he did not look like the person he (Mosley) had seen running in the parking lot. They did so after obtaining identification from the defendant.

Thereafter, Officer Grimm saw defendant walking through the parking lot. He notified the other officers, who began to pursue defendant. Defendant was arrested and taken to the police station.

At the police station, defendant was read his *Miranda* rights. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].) He invoked these rights. As Officer Grimm turned to leave the room, defendant said, "you didn't find a gun, did you?" Grimm replied, "no," and defendant said, "Then you can't arrest me. I didn't do anything."

*Defense*

Ronald Nelson, a criminalist, examined the shirt defendant was wearing on the night of October 2. He found a nitrate pattern on the shirt which he concluded could not have been produced by a person firing a weapon. He determined that the pattern on the shirt was consistent with being next to a person who shot a gun.

David Faircloth was part of the private security team at the concert. He saw a Black man with a gun. The shirt this man was wearing did not match defendant's shirt. The man was also carrying some type of cloth in his other hand.

Albert Ellis, defendant's brother, attended the concert with defendant. One of the entertainers threw out a towel during the concert and defendant caught it. When Albert and defendant were leaving the concert he heard defendant shout, "look out," and then he heard a gunshot.

Mathea Pace saw defendant outside after the concert. She knew him from high school. She saw a man with a gun. She saw defendant push the man's hand up and then she heard a shot.

## DISCUSSION

### I.

*Denial of Section 1118.1 Motion*

At the close of the prosecution case, defendant made a section 1118.1 motion for acquittal. He argued that the name of the victim is a material element of an assault with a deadly weapon and that the People failed to offer any proof to satisfy this essential element. Next, defendant argued that the evidence was insufficient to support count III (carrying a concealed weapon) because Officer Grimm was uncertain from where the weapon came. The court denied the motion.

■ When reviewing a section 1118.1 motion: "The court must determine ' "whether from the evidence, including reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged. [Citations.]" ' [Citations.] '[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence

which is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]

" '[T]his inquiry does not require a [reviewing] court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation.] Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Original italics.) [Citation.] Where the section 1118.1 motion is made at the close of the prosecution's case-in-chief, the sufficiency of the evidence is tested as it stood at that point. [Citations.]" (*People* v. *Trevino* (1985) 39 Cal.3d 667, 695 [217 Cal.Rptr. 652, 704 P.2d 719].)

A. *Was Officer Grimm's testimony credible?*＊

. . . . . . . . . . . . . . . . . . . .

B. *Is an identifiable and named victim a necessary element to prove an assault with a deadly weapon?*

 Relying on *People* v. *Christian* (1894) 101 Cal. 471 [35 P. 1043], defendant contends that an identifiable victim is a necessary element of an assault with a deadly weapon. Defendant asserts that the lack of this element made it impossible or nearly impossible to defend himself.

Defendant was convicted of violating section 245, subdivision (a)(2). It provides: "Every person who commits an assault upon the person of another with a firearm is punishable by imprisonment in the state prison for two, three, or four years, or in a county jail for a term of not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment." Section 240 defines assault: "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

 "To prove a violation of Penal Code section 245, subdivision (a), the prosecution must establish that a person was assaulted and that the assault was committed by the use of a deadly weapon or instrument or by means of

---

＊See footnote, *ante,* page 734.

force likely to produce great bodily injury. Assault with a deadly weapon is a general criminal intent crime [citation] and requires proof only of an *attempt* to commit a violent injury upon the person of another. It does not require proof that an injury occurred. [Citation.] The requisite intent for the commission of an assault with a deadly weapon is the intent to commit a battery. [Citation.] Moreover, when an act inherently dangerous to others is committed with a conscious disregard of human life and safety, the intent to commit a battery is presumed. [Citation.]" (*In re Jose R.* (1982) 137 Cal.App.3d 269, 275 [186 Cal.Rptr. 898].)

 Defendant does not challenge any of the other required elements necessary to convict one of assault with a deadly weapon.

In *People* v. *Christian, supra,* 101 Cal. 471, the complaint alleged an assault with a deadly weapon upon George Magin. Defendant was held to answer on this complaint following a preliminary hearing. Thereafter the district attorney filed an information charging him with assault with a deadly weapon upon George Massino. He was tried and convicted upon that information. (*Id.* at pp. 472-473.) The Supreme Court reversed his conviction, stating: "The defendant was not charged by the complaint before the magistrate with assaulting one George Massino; neither does the commitment indicate that he was held to answer before the superior court upon that character of charge. There is a wide difference between the offense of an assault with a deadly weapon upon John Doe and that of assault with a deadly weapon upon Richard Roe. *The name of the party assaulted is a material element of the offense, and common justice to the defendant demands that he be notified of the particular offense for which he stands committed.* In the present case he had no such notice. If the record gave him any information upon the subject, it would be an inference at least that he was to be tried for the assaulting of one Magin, the party named in the complaint, but it was only when he was called upon to plead that he for the first time became aware of the nature of the offense for which he was to be put to trial. Again, this party was arrested and brought before a magistrate to defend himself against a charge of assaulting one Magin. Under those circumstances, and under a complaint charging that offense, he could not be called upon to defend himself for assaulting one Massino, for there was no complaint on file upon which to base an examination of that character." (*People* v. *Christian, supra,* at p. 473, italics added.)

The court went on to state: "It may be laid down as an unquestioned proposition that the district attorney has no authority to disregard the commitment, and cull from the evidence taken at the preliminary examination some real or imaginary offense, not included in the complaint upon

which the defendant was charged and examined." (*People* v. *Christian, supra,* 101 Cal. at p. 475.) The thrust of *Christian* is that the defendant must be informed of the charge against him so he may "defend himself against the crime with which he is charged, and no other crime." (*Id.* at p. 476.) The court concluded: "[W]henever a defendant is informed against for an offense different from that charged in the complaint upon which he was examined, or not included therein, he has had no examination for that offense, and is entitled to have the information set aside upon the ground that he has not been legally committed. [¶] . . . It follows that the offense charged in this information is not the offense for which the defendant was examined; neither is it an offense included therein, and consequently not one upon which the district attorney was justified in filing an information based upon data found in the evidence taken upon the preliminary examination of the defendant." (*Id.* at p. 477.)

The "named victim" language of *Christian* evidently has not been the subject of discussion in any subsequent California opinions. However, *People* v. *Birch* (1969) 3 Cal.App.3d 167 [83 Cal.Rptr. 98] discusses issues pertinent to identification of multiple potential victims. In *Birch,* defendant was in her apartment. She was angry over a rent dispute. She had a rifle and shot it in the direction of Mr. Ferguson, who had turned and was walking away from her apartment. (*Id.* at p. 172.) Officer Council was standing on the porch of defendant's apartment. He heard the gunshot, and apparently the bullet passed from one to six inches behind him. (*Id.* at p. 173.) Defendant was found guilty of two counts of assault with a deadly weapon, one against Ferguson and one against Officer Council. (*Id.* at pp. 169-170.) The appellate court reversed the conviction for assault with a deadly weapon against Officer Council.

"Here, there is substantial evidence to show that the defendant intended to commit a violent injury upon the person of Roderick Ferguson. Had the bullet intended for Ferguson struck Officer Council there could be no doubt that the intent to injure Ferguson would be transferred to Officer Council, and in these circumstances the defendant would be guilty of assault with a deadly weapon against both Ferguson and Council. However, the bullet intended for Ferguson did not strike Officer Council and there is no evidence in the record that the bullet fired at Ferguson was intended to inflict a violent injury upon Officer Council. Therefore, the evidence is insufficient to sustain the judgment as to count I of the amended information charging assault upon Officer Council. *This is not to say that an assault with a deadly weapon may not be perpetrated against two or more victims by the firing of a single shot where the bullet does not strike any one of the intended victims.*" (*People* v. *Birch, supra,* 3 Cal.App.3d at p. 177, italics added.)

The above case seems to imply, in a situation not involving transferred intent, the defendant must have intended his assault against a particular victim. The context of *Birch,* however, indicates the defendant was unaware of the presence of Council. Here the defendant was clearly aware of the crowd assembled in the direction in which he fired the gun. Any one of a number of intended victims may satisfy the component of the "person of another." An examination of what constitutes such person is helpful to our determination.

In *People* v. *Herrera* (1970) 6 Cal.App.3d 846 [86 Cal.Rptr. 165] the court stated, "The offense of assault with a deadly weapon requires proof only of an attempt to commit a violent injury upon the person of another; does not require proof an injury occurred; and is supported by an inference from proof the gun was fired in the direction of another." (*Id.* at p. 851.)

In *People* v. *Carmen* (1951) 36 Cal.2d 768 [228 P.2d 281], the court emphasized, " ' ' "it is not an assault to fire a gun in the air for the purpose of frightening another, it is an assault, *without regard to the aggressor's intention,* to fire a gun at another or in the direction in which he is standing. The law will not tolerate such a reckless disregard of human life." ' " " (*Id.* at p. 775.) Also, "it is not the subjective belief of the victim which is determinative, but whether the person charged with the assault had the 'present ability to commit a violent injury.'" (*People* v. *Mosqueda* (1970) 5 Cal.App.3d 540, 544 [85 Cal.Rptr. 346].)

This discussion thus brings us full circle. To understand what constitutes the "person of another" for our purposes, we focus on the actions of the defendant. The victim's fear, lack of fear, injury, or lack of injury are not elements which need to be proved or disproved. All that is necessary is that there is a victim; the characteristics of the victim are not critical elements of the offense. The law is seeking to punish the reckless disregard of human life, and what needs to be shown is that a human life was threatened in the manner proscribed in sections 245 and 240. Although we conclude the naming of the particular victim is not an element of assault with a deadly weapon, this leaves the question whether the absence of a named victim is a denial of due process because the defendant is unable to mount a defense.

■ "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5].) A further reason why particularity is required is so the defendant may plead

the judgment as a bar to any later prosecution for the same offense. (*People v. Jordan* (1971) 19 Cal.App.3d 362, 368 [97 Cal.Rptr. 570].)

 Due process is satisfied in this case. There was no question which of defendant's acts was the basis for the assault with the deadly weapon. The testimony at the preliminary hearing, combined with the information, clearly informed defendant of the charges he was facing and the facts underlying these charges. He was not taken by surprise, and there was sufficient specificity to bar any later prosecution for the same offense. This is not to say that the People need not name a victim whenever they charge an assault with a deadly weapon. In those cases where further specificity is reasonably possible, such should be provided. In the case here, defendant shot into a crowd of people. By pure chance, no one was injured. The crowd dispersed and left the scene of the crime, presumably to escape the dangerous situation. Law enforcement's concern during this dangerous time was to check for injured people and apprehend those causing the danger. The victims fled the scene and were unknown to law enforcement. This was not due to any lack of diligence on the police officers' part. Due process is not offended in this type of unusual situation where a particular victim is not identified. Public policy would be offended to allow a defendant to fire a gun in the direction of a human being under these circumstances and not be punished for an assault with a deadly weapon.

In conclusion, the language of *People* v. *Christian, supra,* 101 Cal. 471, that the name of the party assaulted is a material element of the offense, was set forth in a due process context requiring notification of the particular offense for which one is being tried and committed. There was no confusion here of what act defendant was tried and convicted. If the prosecution's evidence was believed, there were clearly victims of defendant's actions, although not individually named. The concerns in *Christian* were not present here, and its "named victim" language is not dispositive of the unusual situation presented in this case.

## II.-IV.*

. . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The trial court is hereby ordered to modify the abstract of judgment to reflect that the term imposed on count II is stayed, that stay to become

---

*See footnote, *ante,* page 734.

permanent when the sentence for count I is completed. A copy of the amended abstract of judgment shall be forwarded to the Department of Corrections. In all other respects, the judgment is affirmed.

Ardaiz, Acting P. J., and Brown (G. A.), J.,* concurred.

Appellant's petition for review by the Supreme Court was denied March 15, 1990.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.