Filed 12/13/13  In re D.C. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re D.C., a Person Coming Under the Juvenile Court Law. | B244347 (Los Angeles County Super. Ct. No. TJ19990) |
| THE PEOPLE, Plaintiff and Respondent, v. D.C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tamara E. Hall, Judge.  Reversed with directions.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.

_____

A juvenile against whom a Welfare and Institutions Code section 602 petition was sustained contends that the trial court: (1) erred when it made multiple true findings for a single offense of aggravated assault, (2) erred in computing his maximum term of confinement, and (3) committed reversible error by failing to declare whether the "wobbler" assault offense was a felony or misdemeanor, and by failing to exercise its discretion. We agree and remand with directions.

## PROCEDURAL BACKGROUND

On June 11, 2012, the district attorney filed a three-count petition, pursuant to Welfare and Institutions Code section 602, alleging that appellant D.C. committed assault with a deadly weapon upon Brea P. (Pen. Code, § 245,[1] subd. (a)(1); count 1), assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 2), and misdemeanor battery upon Shondra Williams (§ 242; count 3). (No victim was identified as to count 2.)

The allegations of the petition were sustained following a contested adjudication hearing. Appellant admitted allegations from two prior petitions.[2] He was ordered placed in short term camp for a maximum term of five years, eight months.

## FACTUAL BACKGROUND

*Prosecution evidence*

Appellant lived on the same street as 13-year-old Brea and her eight-year-old brother Jashawn. On June 7, 2012, appellant hit Jashawn in the head with an acorn or a pinecone after trying to take away his bicycle. Brea later confronted appellant. She was angry, yelled at him and threatened to tell her parents.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Two petitions filed on May 10, 2012, alleged that appellant committed a battery on a school employee (§ 243.6), and a trespass on school grounds (§ 626.2), both misdemeanors.

2

Brea told her mother, Shondra Williams, about the incident. The next day, Williams encountered appellant as she headed up the street intending to speak to his mother about the acorn incident. Williams was accompanied by Brea and Brea's 23-year-old (unnamed) sister. The three females stopped about five feet from appellant. Williams asked appellant where his mother was and why he had hit Jashawn in the head. Brea stated appellant hit her little brother. Appellant, who was holding a baseball bat, became angry and threatened to hit Brea. He started spitting and moved toward Brea wildly swinging the bat. Williams stepped between the two to keep appellant from hitting Brea, and Brea's sister tried to grab the bat from appellant's hands.

Appellant swung the bat "everywhere." Brea stepped back and her sister and mother tried to wrest the bat from appellant's grasp. Williams tried to block appellant's blows, as he hit her near an eye and grabbed her hair, pulling her head from side to side. Appellant tried to get around Williams to reach Brea. Eventually, Brea's sister was able to get the bat away from appellant. William suffered a swollen eye, bruising and a hairline fracture. None of the females struck appellant. Moments later, Williams's husband arrived on the scene, grabbed appellant and slammed him against a wall then let him go.

An officer summoned to the scene spoke with appellant and recovered an aluminum baseball bat.

*Defense evidence*

Appellant and his brother De. testified. On June 8, 2012, appellant was 14 years old, five feet two inches tall and weighed 90 pounds. He and his brother were headed to the park to play baseball when Brea and her mother came up.

De. testified that Brea, her sister and Williams yelled at appellant, asking why he threw an acorn at Jashawn. At first they were about five feet away, but soon the women got "in" appellant's face, about a foot from him. Appellant told them the incident with the pinecone had been an accident. Two of the females grabbed appellant, and a third took the bat. Brea hit appellant about 20 times. At one point during the attack, she

3

pinned him against a car with her mother's help. Appellant responded in self-defense, although De. never saw him hit Williams or swing the bat. De. tried unsuccessfully to break up the fight.

Appellant testified that when the three women confronted him, he explained that he and a friend had been tossing a pinecone back and forth as Jashawn rode by on his bicycle. Jashawn got hit with the pinecone thrown by the friend at appellant, who ducked. The females closed in on appellant and were belligerent and raised their voices at him. Brea and Williams grabbed appellant, while Brea's older sister took the bat away. Brea hit appellant and a scuffle ensued. In self-defense appellant grabbed Williams's hair and punched back. He knew he had hit someone but did not know who until he later saw Williams's eye. Appellant claimed to have been hit 20 to 25 times in the face during a period of three to five minutes. He denied ever swinging the bat.

*Rebuttal*

The officer who responded to the scene testified that appellant never told him he was on his way to play baseball with his brother when the argument started, or that he had been hit 20 to 25 times. The officer had not seen any injuries on appellant. Appellant told the officer that Williams had separated him from Brea because Brea was attacking him.

## DISCUSSION

1. *True findings for aggravated assault*

Appellant contends the court erred when it made two true findings of aggravated assault because both counts 1 and 2 refer to a single act—his attempt to hit Brea—and cannot be charged separately as both an assault with a deadly weapon and an assault by means of force likely to cause great bodily injury.

An assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Assault is a general intent crime and does not require specific intent to injure the victim. (*People v. Wyatt* (2010) 48 Cal.4th 776, 780; *People v. Colantuono* (1994) 7 Cal.4th 206, 214 (*Colantuono*).) "[T]he

4

criminal intent required for assault is 'the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another.' [Citation.]" (*Wyatt*, at p. 780.) "Although the defendant must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm." (*Colantuono*, at p. 214.)

Respondent asserts that appellant's argument there can be but one true finding of aggravated assault, because counts 1 and 2 each refer to the same act—appellant's attempt to hit Brea—and cannot be charged as separate forms of aggravated assault is misplaced as it rests on the flawed assumption that both counts involve the same victim, which is not necessarily the case. Relying on *People v. Griggs* (1989) 216 Cal.App.3d 734 (*Griggs*), respondent argues a reasonable inference may be drawn from the record that the unidentified, unnamed victim in count 2 is Brea's sister.

In *Griggs*, the defendant shot at a crowd of people who fled before police could identify the victims. The defendant was charged and convicted of assault with a deadly weapon on an unidentified victim. On appeal, the court rejected defendant's argument that the absence of a named victim was a denial of due process. (*Griggs*, *supra*, 216 Cal.App.3d at pp. 742–743.) The court held that an identifiable, named victim was not a required element to prove an assault with a deadly weapon. But, the circumstances in *Griggs* were unusual. As the court explained, "[t]his is not to say that the People need not name a victim whenever they charge an assault with a deadly weapon. In those cases where further specificity is reasonably possible, such should be provided." (*Id*. at p. 743.) The court said it would offend public policy to allow defendant's act of shooting into a crowd to go unpunished because of the fortuity that the crowd dispersed before the victims who fled could be identified by diligent police officers, whose attention was occupied at first with checking for injuries and apprehending the shooter. (*Ibid*.) The court concluded: "There was no confusion here of what act defendant was tried and convicted. If the prosecution's evidence was believed, there were clearly victims of

5

defendant's actions, although not individually named," and defendant was not taken by surprise.  (*Ibid.*)

The circumstances here are different.  On this record, if Brea's sister was the victim as to count 2, as respondent asserts, there appears to have been no reason she could not easily have been identified and named in that count.  Unlike *Griggs*, *supra*, 216 Cal.App.3d 734, this is not a circumstance in which unidentified victims fled after the crime and could not be located by law enforcement.  Although Brea's adult sister—and Williams's daughter—was not identified by name at trial, it is reasonable to assume she could be readily identified by a reasonably diligent investigation.  Here, due process requires naming of the victim of the offense.

Appellant argues that what occurred here was a single assault on Brea committed in two ways, viz., he swung a bat either as a deadly weapon or with force likely to cause great bodily.  Under *People v. Aguilar* (1997) 16 Cal.4th 1023, he may not be found liable for both, and count 2 must be stricken.  We agree.

The theory upon which the case was tried was that appellant, angry at and attempting to confront Brea, was flailing wildly with a bat, and that Williams stepped between them protect her daughter and to get the bat away from appellant.  Brea and Williams each testified that they believed Brea was appellant's intended target.  Brea believed appellant meant to hit her when he swung the bat and inadvertently hit her mother.  The misdemeanor battery was charged as count 3, and the named victim in that count was Williams.  The record reflects that appellant committed a single assault against Brea.  And, while it is possible that the victim in count 2 was Brea's sister, who was also presumably within striking distance as appellant swung the bat, the juvenile court made no finding to that effect and it is not for us to speculate.

Prior to its amendment in 2012, section 245, subdivision (a)(1) read:  "assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury . . . ."  In *In re Mosely* (1970) 1 Cal.3d 913, 919, footnote 5, the California Supreme Court held that the statute "defines

6

only one offense." The recent amendment to section 245, subdivision (a), separated the clause referring to "a deadly weapon" from the clause referring to "force likely to produce great bodily injury." (See § 245, subd. (a)(1), (a)(4).) But, as analysis of the amendment by the district attorney observed, the amendment did not make any substantive changes in the law, did "not create any new felonies or expand the punishment for any existing felonies. It merely split[] an ambiguous code section into two distinct parts." (Argument Before Sen. Public Safety Com. in Support of Assem. Bill No. 1026, June 14, 2011; from Official Website of Legislative Counsel, legislativecounsel.ca.gov.)

Accordingly, the rule in *In re Mosley*, *supra*, 1 Cal.3d 913 and *People v. Aguilar*, *supra*, 16 Cal.4th 1023, obtains here, and section 245, subdivisions (a)(1) and (a)(4) define only one offense. "The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon." (*Mosley*, at p. 919, fn. 5.) "If prosecutors were permitted to divide [former] section 245, subdivision (a)(1) into two separate offenses regardless of the defendant's conduct, . . . similarly situated defendants who assaulted their victims with deadly weapons other than firearms and were charged with violating section 245, subdivision (a)(1) could receive disparate punishment depending solely upon the language used in the pleadings." (*People v. McGee* (1993) 15 Cal.App.4th 107, 117.) Here, appellant committed a single aggravated assault and the true finding as to count 2 must be stricken.

2.      *New disposition*

Our determination that count 2 must be dismissed renders it unnecessary for us to address appellant's contention that the maximum term of confinement declared by the juvenile court was improper. Remand for a new disposition order is required as to all remaining counts.

*3.    Juvenile court's failure to declare offense as felony or misdemeanor*

Appellant contends the juvenile court's failure to expressly state on the record whether the aggravated assault was a felony or a misdemeanor necessitates remand for that purpose.[3]  We agree.

Welfare and Institutions Code section 702 (section 702) provides that when a juvenile defendant is found to have committed a "wobbler"—i.e., an offense that would in the case of an adult be punishable alternatively as a felony or a misdemeanor—"the court shall declare the offense to be a misdemeanor or felony."  (See also Cal. Rules of Court, rule 5.795(a) ["[i]f any offense may be found to be either a felony or a misdemeanor, the court must consider which description applies and expressly declare on the record that it has made such consideration, and must state its determination as to whether the offense is a misdemeanor or a felony"].)  A primary purpose of section 702 is to ensure that the juvenile court understands it has the discretion to treat the offense as a misdemeanor and exercises that discretion.  (*Manzy W.*, *supra*, 14 Cal.4th at p. 1207.)  To that end, section 702 requires an express, formal finding.  (*Id*. at p. 1204.)  Aggravated assault is a wobbler.  (§§ 245, subds. (a)(1), (4); 17, subds. (a) & (b).)  Thus, an "explicit declaration by the juvenile court" is required.  (*Manzy W.*, at p. 1204.)

Here, the juvenile court did not indicate that it was aware it had discretion to treat the assault as a misdemeanor or a felony.  The minute order for the July 2, 2012 adjudication hearing states that counts 1 and 2 are felonies.  Restating the allegations of the petition, the court found, as to count 1, "the crime of assault by a deadly weapon, violation of [section 245, subd. (a)(1)], as a felony . . . as true."  As to count 2, the court similarly found "the crime of assault by means likely to produce great bodily injury, in violation of [section 245, subd. (a)(4)], as a felony, is true beyond a reasonable doubt."

---

[3] Respondent contends appellant forfeited this argument by failing to raise it in the juvenile court.  Not so.  (See *In re Manzy W.* (1997) 14 Cal.4th 1199, 1210 (*Manzy W.*) [error is not forfeited by failure to object if the court fails entirely to record its exercise of discretion under section 702].)

The minute order from the August 30, 2012 disposition reflects that the juvenile court read and considered the probation officer's report. But, as with other parts of the record, neither that minute order nor the contents of the report indicate the court was aware it had discretion to treat the assaults as misdemeanors. And the line on the minute order in which the court should have indicated which, if any, "[o]ffense(s) [were] declared to be a □ felony (count[s] __ ) [and/or] □ misdemeanor (count[s] __)" was left blank.

Reversal is not automatically compelled when a juvenile court fails to make the required declaration. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.) The error may be found harmless if it is absolutely clear that the juvenile court exercised its discretion and intended to designate the offenses as felonies. (*Ibid*.) Respondent argues that the court's recitation at the adjudication of the language of the petition satisfies *Manzy W.*'s requirement for an express declaration. We disagree. The court's statement regarding counts 1 and 2 tracks the language of the petition, and reflects its finding that appellant committed the charged violations. But it gives no hint the court was aware of or intended to exercise its discretion. A court's statement that an offense was a felony does not itself indicate the court's awareness that it has discretion to treat the offense as a misdemeanor nor an exercise of that discretion. (*In re Jacob M.* (1987) 195 Cal.App.3d 58, 63, abrogated on other grounds by *In re Andrew I.* (1991) 230 Cal.App.3d 572, 581–582.) On this record it is unclear whether the court understood it had discretion to characterize the wobbler as a misdemeanor or exercised that discretion one way or the other. (See *In re Ricky H.* (1981) 30 Cal.3d 176, 191; see also *In re Kenneth H.* (1983) 33 Cal.3d 616, 619–620.) Under these circumstances the matter must be remanded so the juvenile court may exercise its discretion.

## DISPOSITION

The matter is remanded with directions to dismiss count 2, determine whether the relevant offense is a misdemeanor or a felony and to recalculate the maximum term of confinement and to reconsider placement.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

MALLANO, P. J.

ROTHSCHILD, J.