Filed 2/9/24  P. v. Fernandez CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>OBED FERNANDEZ,<br><br>          Defendant and Appellant. | A167245<br><br>(Alameda County<br>Super. Ct. No. 17CR018424) |

In 2017, defendant Obed Fernandez, a lawful permanent resident of the United States, pled no contest to one count of assault with a deadly weapon and one count of domestic violence with injury.  He was placed on probation for three years with a condition that he serve 364 days in jail.

Five years later, Fernandez moved to vacate his convictions under Penal Code[1] section 1473.7, claiming he did not meaningfully understand the immigration consequences of his plea when he entered it.  He now appeals from the denial of the motion, a ruling based on the trial court's determination that his supporting declaration contained "an obvious falsehood."  Applying the independent standard of review as required (*People v. Vivar* (2021) 11 Cal.5th 510, 527 (*Vivar*)), we also conclude that

_____

[1] All further statutory references are to the Penal Code.

1

Fernandez failed to prove that he did not understand the plea's immigration consequences. As a result, we affirm.

I.

FACTUAL AND PROCEDURAL
BACKGROUND

In late May 2017, Fernandez's ex-wife was with her boyfriend at her Oakland apartment.[2] As the boyfriend was leaving, he noticed that her car's rear window was broken. He then returned to the apartment to tell her about the damage. While they were talking inside, Fernandez "pounded on the front door of the residence and demanded entry." Receiving no response, he used a three-foot-long metal pipe "to puncture the metal gate to give him access to the front door" and entered the apartment. Fernandez swung the metal pipe at the boyfriend, but Fernandez's ex-wife stepped in front of the boyfriend and the pipe hit her hand. The boyfriend called 911, at which point Fernandez exited the apartment and broke every window in the boyfriend's car.

About two weeks later, in mid-June 2017, Fernandez's ex-wife left her apartment and saw Fernandez in his car, which was parked behind hers and blocking her from leaving. She "was able to maneuver her vehicle around [Fernandez's] vehicle," but her car was damaged as she drove away. Soon after, her boyfriend also left the apartment. Fernandez got out of his car, holding "a metal 'The Club' steering wheel lock," and threatened to "beat [the boyfriend's] ass" and "kill" him. Fernandez separated the lock into two parts, threw one part at the boyfriend but missed, and used the other part "to strike

_____

[2] We draw the underlying facts from the probation report. No preliminary hearing was held, and the stipulated factual basis for the plea was Fernandez's "conversations and review of the evidence" with his trial counsel.

[the boyfriend] in the head repeatedly." The boyfriend was able to subdue Fernandez, and the police arrested him.

Later that month, Fernandez was charged by complaint with five felonies and six misdemeanors. Based on the May incident, Fernandez was charged with one count of first degree residential burglary and two counts of assault with a deadly weapon, all felonies. He was also charged with three counts of vandalism and one count of disobeying a domestic relations court order, all misdemeanors. Based on the June incident, he was charged with felony counts of assault with a deadly weapon and criminal threats and misdemeanor counts of vandalism and disobeying a domestic relations court order.[3]

On July 14, 2017, under a plea agreement, Fernandez pled no contest to two counts stemming from the May incident: (1) assault with a deadly weapon against his ex-wife's boyfriend and (2) willful infliction of corporal injury under section 273.5, subdivision (a) (domestic violence with injury), "as a lesser included offense" of the count of assault with a deadly weapon against his ex-wife.[4] In exchange, the remaining counts were dismissed, and

---

[3] The felony charges were brought under sections 459 (burglary), 245, subdivision (a)(1) (assault), and 422 (criminal threats). Also, under section 667.5, subdivision (c)(21), the burglary was alleged to be a violent felony on the basis that a non-accomplice was present during its commission. The misdemeanor charges were brought under sections 594, subdivision (a) (vandalism), and 273.6, subdivision (a) (disobeying court order).

[4] In fact, a violation of section 273.5, subdivision (a), is not a lesser included offense of assault with a deadly weapon. The former offense requires that the victim sustained "corporal injury resulting in a traumatic condition" (§ 273.5, subd. (a)), but the latter offense " 'does not require proof that an injury occurred.' " (*People v. Griggs* (1989) 216 Cal.App.3d 734, 740.) We also note that section 273.5, subdivision (a), is a "wobbler." (See *People v. Vessell* (1995) 36 Cal.App.4th 285, 288.) It was not specified at the plea

in September 2017 he was placed on probation for three years with the condition that he serve 364 days in jail.

Before accepting Fernandez's plea, the trial court asked his public defender whether the attorney "had the opportunity to address with [Fernandez] this plea, the consequences of the plea, his constitutional rights, and immigration status." The public defender responded, "Yes, your Honor."[5] The court then asked the attorney whether he "need[ed] any more time," and he responded, "No, your Honor."

The trial court questioned Fernandez similarly. The court asked him, "[D]id you have sufficient time to speak with [the public defender] about this plea, the consequences of the plea, your constitutional rights, and immigration status?" Fernandez responded, "Yes." The court then asked whether he "need[ed] any more time to speak with [his attorney]," and he responded, "No." Finally, the court asked, "Do you also understand if you are not a citizen of the United States this conviction will likely result in your deportation or denial of residency and/or citizenship?" Fernandez responded, "Yes."[6]

In July 2022, now represented by retained counsel who also represents him in this appeal, Fernandez moved under section 1473.7 to vacate his

hearing whether Fernandez was admitting to a felony or a misdemeanor, but his plea form states he was pleading no contest to "felony 273.5."

[5] The public defender also signed a statement on the plea form that he discussed with Fernandez "the possible consequences of a plea of guilty or no contest, including immigration consequences if applicable."

[6] Fernandez also initialed a box on his plea form indicating he "underst[oo]d that if [he] is not a citizen of the United States, this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization." He was assisted by a Spanish interpreter for purposes of signing the plea form, as well at all the relevant hearings.

4

convictions because "he did not meaningfully understand the lifetime immigration consequences of his plea." The motion argued that neither the plea form nor the immigration advisement the trial court gave before accepting his plea was sufficient to inform him that he faced "mandatory removal." The motion did not mention Fernandez's public defender, and Fernandez disavowed any claim of ineffective assistance of counsel.

In support of the motion, Fernandez filed a declaration in which he stated that he was not a United States citizen, came to this country "many years ago," and had "permanent resident status."[7] He also detailed his "strong family, community ties, obligations, and opportunities in [the] United States"—including because he had two citizen children—and stated he feared returning to Mexico because "[i]t is overrun with gang and cartel violence."[8]

Fernandez averred that when he entered the plea, he "did not meaningfully understand that this conviction is considered an aggravated felony and it is a lifetime bar to obtain immigration benefits." He continued, "I was never asked about my immigration status and pled guilty based on my attorney's advice that [the] district attorney offered a good plea. [¶] . . . [¶] I did not ask questions because I wanted to put this case behind me and move on with my life and be with my family." He also stated that he "would not have accepted this plea if [he] knew that this conviction could result in permanent mandatory removal and denial of benefits or relief for life."

---

[7] At oral argument, Fernandez's counsel indicated that Fernandez may have since lost his green card, but there is no evidence of that in the record before us.

[8] According to the probation report, Fernandez was born in Mexico in 1965 and raised there. His children were born in California in 1998 and 2003, but it is unclear from the record when he moved to the United States.

The prosecution opposed the motion, and the trial court held a hearing on it in January 2023. At the prosecution's request, the court took judicial notice "of its own file in this matter," including the complaint, the transcript of the plea hearing, and the probation report.[9] It also took judicial notice of the fact that Fernandez's previous attorney was still a practicing Alameda County public defender. No witnesses testified, and no other evidence was introduced. Thus, as the court later made clear, its ruling was "based on the papers" and counsel's arguments.

Fernandez's counsel began by acknowledging that it was "very clear in this case that immigration consequences were considered to some degree," since Fernandez received 364 days in jail instead of 365. Counsel explained that "by negotiating for 364 days, for some [California criminal] statutes that would take [the offense] out of the aggravated felony category" under federal law. He argued that the lesser term "didn't do [Fernandez] any good," however. Regardless of whether the crimes were aggravated felonies, subsequent cases clarified that under federal law, domestic violence with injury is a "crime of domestic violence," and assault with a deadly weapon is "a crime involving moral turpitude." According to counsel, the fact that Fernandez's convictions fell into these categories subjected him to "permanent" immigration consequences, including losing his green card and being unable to return to this country were he deported.

The prosecutor responded that Fernandez's declaration was "self-serving" and not independently corroborated. In particular, the prosecutor questioned the declaration's statement that Fernandez "was never asked

_____

[9] The trial judge who considered the section 1473.7 motion happened to be the same judge who sentenced Fernandez. A different judge took Fernandez's plea.

about his immigration status," given the evidence that the immigration issue was "on the mind of everybody" at the plea hearing. The prosecutor also argued that Fernandez could not establish prejudice because if he were permitted to withdraw his plea, he would be "back facing five serious felon[ies], one of them violent," exposing him to over a decade in custody were he convicted.

The trial court denied the motion. The court found not credible the statement that Fernandez was never asked about his immigration status, because it did not "believe that a competent criminal defense attorney would negotiate for 364 days in jail" without talking to Fernandez about his status. In turn, the falsehood "color[ed] the rest of the facts asserted in the declaration," leaving the court unconvinced that Fernandez did not meaningfully understand the immigration consequences of his plea. Thus, the court did not reach the issue of prejudice.

## II.
### DISCUSSION

#### A. *General Legal Standards*

By statute, before accepting a plea, a trial court must inform a defendant as follows: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a).) In addition, over a decade ago, the United States Supreme Court held that it constitutes ineffective assistance of counsel under the Sixth Amendment to fail to advise a client whether a plea "carries a risk of deportation." (*Padilla v. Kentucky* (2010) 559 U.S. 356, 374 (*Padilla*).) Our state Legislature responded by enacting section 1016.3, "which essentially codified the holding of *Padilla* by requiring defense counsel to 'provide

7

accurate and affirmative advice about the immigration consequences of a proposed disposition.' " (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 308 (*Rodriguez*), quoting § 1016.3, subd. (a).)  The statute also requires the prosecution to "consider the avoidance of adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution." (§ 1016.3, subd. (b).)

Effective January 1, 2017, section 1473.7 was enacted " 'to "fill a gap in California criminal procedure" ' " that existed because (1) *Padilla* was not retroactive and (2) a writ of habeas corpus is not available to those who are no longer in custody. (*Rodriguez, supra,* 68 Cal.App.5th at pp. 308–309.)  The current version of the statute provides that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction" for specified reasons, including that "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.  A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1).)

To establish entitlement to relief under section 1473.7, a defendant must prove two elements by a preponderance of the evidence:  (1) an error occurred damaging the defendant's ability to meaningfully understand or accept the immigration consequences of the plea and (2) the error was prejudicial. (*People v. Curiel* (2023) 92 Cal.App.5th 1160, 1172.)  Given that ineffective assistance of counsel is not required, courts have held that "the focus of the inquiry in a section 1473.7 motion is on the '*defendant's own error*' " in misunderstanding the plea's consequences. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871; accord *Rodriguez, supra,* 68 Cal.App.5th at p. 322.)

8

As for the prejudice element, it "does not require a showing that, if the [defendant] had rejected the plea and gone to trial, there is a reasonable probability [the defendant] would have obtained a more favorable result." (*Rodriguez*, at p. 311.) Instead, the required showing is "a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529.)

We independently review a trial court's ruling denying a motion under section 1473.7. (*Vivar*, *supra*, 11 Cal.5th at p. 527.) Under this standard, " 'an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' " (*Ibid.*) Independent review is not equivalent to de novo review, in that we "may not simply second-guess factual findings that are based on the trial court's own observations." (*Ibid.*) But where, as here, "the trial court's factual findings 'derive entirely from written declarations and other documents,' the trial court and the reviewing court ' "are in the same position," ' and no deference is owed." (*People v. Curiel*, *supra*, 92 Cal.App.5th at p. 1173, quoting *Vivar*, at p. 528.)

> ### B. Fernandez Has Not Proven that He Failed to Meaningfully Understand the Immigration Consequences of His Plea.

> #### 1. The immigration consequences of Fernandez's plea

To establish that a plea had adverse immigration consequences, a defendant must show "that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1).) Fernandez clearly made this showing because his convictions render him deportable, but he fails to support a key premise of his request for relief: that he is subject to *mandatory* immigration consequences. (See *In re Marriage of Marshall* (2018) 23 Cal.App.5th 477,

9

486 [appellate court does not have burden to develop parties' arguments for them].)

Under federal law, a noncitizen is "deportable" if convicted of specified crimes. (8 U.S.C. § 1227(a)(2); *Moncrieffe v. Holder* (2013) 569 U.S. 184, 187.) These include (1) "a crime of moral turpitude" committed within 10 years of being admitted as a lawful permanent resident, if "a sentence of one year or longer may be imposed"; and (2) "a crime of domestic violence." (8 U.S.C. § 1227(a)(2)(A)(i), (E)(i).) It is undisputed that Fernandez's conviction of domestic violence with injury is categorically "a crime of domestic violence" under 8 United States Code section 1227(a)(2)(E)(i). (*Carrillo v. Holder* (9th Cir. 2015) 781 F.3d 1155, 1159.) It is also undisputed that his conviction of assault with a deadly weapon is categorically "a crime of moral turpitude" under 8 United States Code section 1227(a)(2)(A)(i). (*Safaryan v. Barr* (9th Cir. 2020) 975 F.3d 976, 979.) Thus, both convictions rendered Fernandez deportable, meaning they have "the potential to cause removal" under section 1473.7.

Fernandez claims that his convictions also have other potential adverse immigration consequences, but he fails to provide supporting legal authority. For example, he claims he is "ineligible for adjustment of status" because the assault conviction made him an "inadmissible" immigrant. True, as a crime of moral turpitude, the assault conviction renders Fernandez "inadmissible." (8 U.S.C. § 1182(a)(2)(A)(i)(I).) But adjustment of status under the provision he cites allows the government to adjust a noncitizen's status "*to* that of an alien lawfully admitted for permanent residence," a status the record reflects he already has. (*Id.*, § 1255, subd. (a), italics added.) Thus, although a noncitizen is ineligible for adjustment of status unless "admissible to the

10

United States for permanent residence" (*ibid.*), Fernandez fails to show that this provision applies to him.

In addition, Fernandez contends the other immigration consequences of his plea include "losing his permanent resident status and be[ing] barred [from] receiv[ing] any immigration benefits for life." He also states that the convictions "bar him from ever becoming a naturalized citizen." But he does not cite any authority to show these are necessary consequences of his convictions. Importantly, although both convictions render him deportable, on appeal he does not claim that they subject him to mandatory deportation (as would be the case if either crime constituted an "aggravated felony").[10] (See *Moncrieffe v. Holder, supra,* 569 U.S. at p. 187; *People v. Lopez* (2022) 83 Cal.App.5th 698, 710.) Although we are willing to assume the identified consequences would result *if* he were deported, he fails to demonstrate that the convictions are an absolute "bar" to naturalization or other immigration benefits.

> 2. There is no credible evidence that Fernandez did not meaningfully understand his plea's actual consequences.

With this understanding of the adverse immigration consequences of Fernandez's plea in mind, we turn to whether Fernandez has proven by a preponderance of the evidence that he did not meaningfully understand those consequences. We conclude he has not.

To begin with, Fernandez's declaration is premised on his failure to understand the supposed mandatory consequences of his plea. Fernandez

---

[10] In the section 1473.7 motion, Fernandez claimed that he was subject to "mandatory deportation," and he stated in his declaration that he did not realize one of his convictions was for "an aggravated felony." At the hearing on the motion, however, his counsel did not argue that either conviction was for an aggravated felony or offer any legal support for the claim that Fernandez was subject to mandatory deportation.

averred that when entering the plea he "did not meaningfully understand that this conviction is considered an aggravated felony and it is a lifetime bar to obtain immigration benefits." He also stated that he "would not have accepted this plea if [he] knew that this conviction could result in permanent mandatory removal and denial of benefits or relief for life" and "[t]here was little to gain" by accepting a shorter sentence "when this conviction can be [the] basis of . . . mandatory deportation afterwards." But Fernandez has not demonstrated that either conviction actually has such consequences, and his failure to understand nonexistent consequences is obviously not a basis for relief.

Even if the declaration could be read as stating that Fernandez did not understand that the convictions rendered him deportable or exposed him to other non-mandatory consequences, any such claim would not withstand scrutiny. Both Fernandez and his public defender affirmatively indicated at the plea hearing that they had a sufficient opportunity to discuss Fernandez's "immigration status" with each other, directly contradicting the declaration on this point. In addition, we agree with the trial court that Fernandez's statement that he "was never asked about [his] immigration status" is not credible, given that he received only 364 days in jail. "[A] crime of violence . . . for which the term of imprisonment [is] at least one year" constitutes an aggravated felony. (8 U.S.C. § 1101(a)(43)(F).) Thus, by receiving a term of less than a year, Fernandez avoided having his conviction for domestic violence with injury subject him to mandatory deportation. He fails to offer any plausible reason the shorter term would be negotiated had the parties been unaware he is not a citizen.

Moreover, Fernandez agreed at the plea hearing that he understood that if he was "not a citizen of the United States this conviction [would] likely

12

result in [his] deportation or denial of residency and/or citizenship." Relying on decisions holding that a general advisement under section 1016.5 does not inform a defendant that deportation is mandatory, Fernandez argues that he was not informed "that a mandatory immigration consequence was loss of permanent resident status and the denial of naturalization." (E.g., *People v. Patterson* (2017) 2 Cal.5th 885, 895–896; *People v. Lopez*, *supra*, 83 Cal.App.5th at p. 712.) These decisions are inapposite. Not only has Fernandez failed to show that his convictions have such mandatory immigration consequences, he was also advised that his convictions were *likely* to result in deportation and denial of citizenship, not just that they *may have* those consequences as required by section 1016.5. He does not even acknowledge the advisement he actually received, much less explain why it was inadequate to inform him that he was deportable and faced other possible consequences.

In short, Fernandez has not carried his burden to show that he did not meaningfully understand the immigration consequences of his plea. As a result, the trial court properly denied his motion to vacate his convictions.

III.
DISPOSITION

The January 5, 2023 order denying Fernandez's motion for relief under Penal Code section 1473.7 is affirmed.

13

_____

Humes, P.J.


WE CONCUR:



_____

Banke, J.



_____

Castro, J.*




      *Judge of the Superior Court of the County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*People v. Fernandez* A167245