Filed 3/13/25  P. v. Perez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JOSEPH EDWARD PEREZ, JR.,<br><br>  Defendant and Appellant. | F087344<br><br>(Super. Ct. No. F22900584)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

J. M. Malik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, Ian Whitney, and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

While incarcerated in Pleasant Valley State Prison, defendant and appellant Joseph Edward Perez, Jr. grabbed a correctional officer and lunged at the officer with an inmate-

manufactured weapon. Another correctional officer nearby saw the weapon and tackled Perez. Perez was convicted of assault with a deadly weapon and possession of a weapon in a penal institution. The trial court sentenced him to 25 years to life as a third-strike offender, consecutive to the 59-year-to-life sentence he was already serving.

On appeal, Perez contends: (1) the assault conviction must be reversed because the single assault charge alleged two victims but no unanimity instruction was given to the jury; (2) the trial court prejudicially erred by failing to instruct the jury on simple assault as a lesser included offense of assault with a deadly weapon; (3) the prosecutor made an improper racially based argument to the jury in violation of Perez's state and federal constitutional rights, as well as California's Racial Justice Act (RJA); and (4) the cumulative effect of the errors denied Perez due process and a fundamentally fair trial.

We affirm.

## PROCEDURAL BACKGROUND

On December 13, 2022, the Fresno County District Attorney filed an information charging Perez with assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count 1) and possession of a weapon in a penal institution (§ 4502, subd. (a); count 2). The information alleged Perez had suffered two prior strike convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), which also qualify as serious felony convictions (§ 667, subd. (a)).[2]

On October 20, 2023, the jury found Perez guilty on both counts as pled in the information. In a bifurcated proceeding, Perez admitted his two prior strike convictions.

On December 12, 2023, the trial court denied Perez's *Romero*[3] motion. The court sentenced Perez to 25 years to life for the assault as a third-strike offender, consecutive to

---

[1] All further statutory references are to the Penal Code.

[2] The trial regarding Perez's prior strike convictions was bifurcated at his request.

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

his existing sentence of 59 years to life. The court also imposed six years for the weapon possession charge, stayed pursuant to section 654.[4]

Perez filed a timely notice of appeal.

## FACTUAL BACKGROUND

### A. Prosecution's Case-in-Chief

On February 21, 2021, Correctional Officers Estevan Hernandez and Refugio Solano were the assigned floor officers in Facility D of Pleasant Valley State Prison. At 6:23 a.m., approximately 20 inmates, including Perez, were released from their cells for breakfast. Hernandez and Solano were sitting on stools behind a podium supervising the inmates getting their meals. Because Perez was disabled in a wheelchair,[5] he was allowed to go straight from his cell to get his food tray while the other inmates normally go a different route to get their trays. Officer Jaime Lopez was in the control room on the second floor and saw Perez follow the rest of the inmates instead of taking his usual path. This was unusual and caught Lopez's attention. Lopez used a speaker connected to the podium to notify Hernandez and Solano that Perez was coming over.

Perez was speaking to Hernandez as he approached using his foot to move the wheelchair forward. Solano could not understand what Perez was saying because he was wearing a mask and mumbling. Perez looked agitated and upset. Solano moved to within about one foot or two feet from Hernandez to provide coverage to Hernandez when Perez came into an area designated as out of bounds for the inmates. Hernandez

---

[4] On March 13, 2024, the trial court held a hearing to review its sentencing in response to a letter from the Department of Corrections and Rehabilitation (CDCR) about an error in the sentence. Specifically, the CDCR's letter stated the court had imposed a two-year sentence for Perez's prior Monterey County case (SS062707A), but the term doubled due to his strike should have been four years. An amended abstract of judgment was filed on April 8, 2024, reflecting the correction.

[5] Perez used a wheelchair because he had an above the knee amputation of his left leg.

3.

asked Perez "hey, what's up." At first Hernandez could not understand what Perez was saying but then he heard Perez say, "your rats have me twisted." Hernandez had no prior negative contact with Perez and no clue what Perez meant by that statement. Perez then used his right hand to grab Hernandez's left arm. Solano saw Perez reach with his left hand for a shiny pointy object that looked like a weapon. Solano said, "he has a weapon," but Hernandez did not see the weapon. From the control room, Lopez saw Perez pull Hernandez toward him with his right arm and swing at Hernandez with his left arm. The weapon came within arm's length of Hernandez. Solano tackled Perez because he was concerned Hernandez might get injured or stabbed. Perez's wheelchair fell to the side and Perez went down to the ground. Some lockers in the area were knocked down. Hernandez and Solano held Perez down and gave him multiple orders to give up the weapon; Perez did not comply. About 15 inmates were 10 or 15 feet away during this incident.

After Perez showed his hands, Hernandez handcuffed him. The officers then rolled Perez over and found the weapon underneath him. It was an inmate manufactured weapon about seven inches long. The weapon was a piece of metal sharpened at one end with a piece of cloth wrapped around the other end to form a handle. Solano took control of the weapon while Hernandez maintained control of Perez.

Officers Chase Stringer and Christopher Hernandez[6] escorted Perez to the program office. Stringer took photographs of Perez's inmate identification, the recovered inmate-manufactured weapon, as well as Hernandez and Solano, but did not take photographs of Perez's injuries.

---

[6] There were two correctional officers at the prison with the surname Hernandez. Unless otherwise specified, all references to Hernandez hereafter are to the victim, Estevan Hernandez.

4.

## B. Defense's Case

Perez testified on his own behalf.  On the morning of February 21, 2021, Perez's cell door opened for "chow."  As Perez was coming out of his cell, he saw a weapon underneath his cell door.  Perez picked up the weapon and went to the podium to Hernandez.  He thought he was "doing the right thing" by giving the weapon to Hernandez.  Perez used his dominant left arm to push forward his wheelchair's left wheel and kicked with his foot.  His right arm was down in his lap, and he was wearing a mask due to Covid protocols.  Hernandez asked Perez "what do you want" when Perez was close to the podium.  Perez held out the weapon in his right hand while pushing his wheelchair with his left hand.  Solano then tackled him before Perez could say he found the weapon by his door.  Perez was about two and half or three feet away when Solano tackled him.  He denied saying anything like "your rats got me twisted" or grabbing Hernandez.

The weapon fell out of Perez's hand when he and the officers hit the lockers in the area.  The officers held him down and kept yelling at Perez to stop resisting.  Perez could not move or resist because the officers were on top of him.  Hernandez had his knee on Perez's lower back and all his weight on Perez while holding Perez's right arm behind his back.  Once Perez was handcuffed, the weapon was found underneath his leg.  Stringer then rolled Perez to the program office.  Perez testified that Stringer beat him in the office by hitting him in the back of the head and kicking him while he was on the ground.

Perez was taken to Coalinga Regional Medical Center.  At the hospital, he told Dr. David Smith that he injured himself from a fall.  Perez believed he would be beaten when he returned to prison if he told the doctor in front of the two officers next to him that he got injured by correctional officers beating him.  Dr. John Weilbacker provided treatment to Perez.  Perez had an upper lip laceration that went through the lip's outer to inner part and a rupture to his right bicep tendon.  Dr. Weilbacker stitched the laceration.  Perez had pain in his arm and a bruise on his forehead.  Perez was recommended to

transfer to another medical facility for additional treatment, but he refused and signed out against medical advice.

Perez has not assaulted a correctional officer while in prison. He assaulted another inmate 20 years ago. His intention was to do the right thing and turn in the weapon.

## C. Prosecution's Rebuttal

On rebuttal, Stringer denied using or observing any physical force being used against Perez. Christopher Hernandez provided coverage to Stringer as he escorted Perez to the program office after the incident. He did not observe anything out of the ordinary during Perez's transport. Investigator Fernando Tamez testified Perez had not filed any 602 grievances[7] against any of the officers who testified at trial.

## DISCUSSION

## I. Unanimity on Assault

Perez argues the accusatory pleading was defective for alleging multiple offenses in one count because the information charged him in count 1 with assault with a deadly weapon upon both Hernandez and Solano. He claims this defect in the information created complicated instructional problems that were unresolved at trial and require reversal.[8] Perez further contends a unanimity instruction on the assault charge was required because the jury could have divided in their individual verdicts on the identity of the victim based on the evidence, the prosecutor's closing argument, the jury instructions, and the verdict form.

## A. The Charging Document

The purpose of an accusatory pleading is to provide the defendant with reasonable notice of the charges. (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 132 (*Sandoval*).)

---

[7] A 602 is a grievance filed by an inmate against staff.

[8] Perez concedes he waived any defect by failing to demur to the accusatory pleading. (§§ 1004, subd. (b), 1012.)

"[T]he touchstone of determining the adequacy of an accusatory pleading is whether the defendant had adequate notice of the charges against him." (*Id.* at p. 134.)

The information filed on December 13, 2022, alleged Perez "did willfully and unlawfully commit an assault upon Estevan Hernandez and Refugio Solano with a deadly weapon, to wit, a Stabbing Instrument." Perez contends the information was defective because assaults upon separate victims though committed by a single individual during an indivisible course of conduct each comprise a separate punishable offense. "Assaults upon separate victims, even though perpetrated by a single individual during an indivisible course of conduct, each comprise a separate, punishable offense." (*People v. McNeill* (1980) 112 Cal.App.3d 330, 334 (*McNeill*).) However, though the information as filed pled only one count of assault against both officers, neither party seems to have realized on appeal this pleading defect was remedied before the case was presented to the jury. On October 16, 2023, the first day of trial, the prosecutor confirmed to the trial court that the information filed on December 13, 2022, was the current charging document. But the prosecutor acknowledged a mistake in the information and moved "to amend by interlineation and strike three words from Count 1 [']and Refugio Solano[']." Perez's counsel had no objection to the prosecutor's motion. The court agreed to strike those three words from count 1 of the information. The court then asked the prosecutor for his theory of culpability. The prosecutor explained that for the assault charge, "the People believe the evidence will show that [Perez] had an inmate manufactured weapon and swung at a correctional officer."

An accusatory pleading may be amended for "defect or insufficiency, at any stage of the proceedings." (§ 1009; *People v. Anderson* (2020) 9 Cal.5th 946, 958.) A pleading may be amended informally, including by oral request. (*Anderson*, at p. 960 [not every amendment to a pleading need be made in writing]; *People v. Sawyers* (2017) 15 Cal.App.5th 713, 720.) "The informal amendment doctrine makes it clear that California law does not attach any talismanic significance to the existence of a written

information." (*Sandoval*, *supra*, 140 Cal.App.4th at p. 133.) The prosecutor's informal amendment to the information was permissible and served to adequately notify Perez the only alleged victim was Hernandez. Because the information as amended alleged only Hernandez as the victim of the single assault charge, there was no defect in the accusatory pleading.

## B. Unanimity Instruction

Though the information as amended was not defective, we address whether a unanimity instruction on the assault charge was nonetheless necessary based on the evidence and the prosecutor's closing argument.

### 1. **Additional Background**

The trial court instructed the jury on the elements of assault using CALCRIM No. 875 as follows:

> "The defendant is charged in Count 1 with assault with a deadly weapon in violation of Penal Code section 245. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted, he had the present ability to apply force with a deadly weapon to a person."

The jury was further instructed with CALCRIM No. 3550: "Your verdict on each charge and allegation must be unanimous. This means that, to return a verdict, all of you must agree to it." The verdict form on count 1 stated Perez was guilty of "Assault with a Deadly Weapon in violation of Penal Code §245(a)(1), as charged in Count One of the Information filed herein" without reference to a specific person.

In closing argument, the prosecutor argued the evidence showed "[Perez] comes out of his cell, goes towards the officers and says your rats got me twisted, grabs Officer

8.

Hernandez's arm, tries to, lung[e]s at him with the weapon in the other hand." The prosecutor asserted Perez was injured by his own conduct when the officers tackled him after "[Perez] approaches the officer and lunges at Officer Hernandez with a weapon." Later, the prosecutor noted there was "testimony of how [Perez] was lunging at the officers." The prosecutor repeated that Perez "lunges at Officer Hernandez," then said Perez "lunges at them."

Defense counsel argued in closing that Perez tried to do the right thing but did it the wrong way. Counsel asserted the prosecution's story that a one-legged man in a wheelchair with no prior bad blood with the officers rolled over and assaulted "them" lacks logical sense. Counsel observed the word "lunge" kept getting used, noting it had been stated that "Perez lunged at Officer Hernandez." Counsel further stated, "Officer Hernandez believes he lunged at him, but he also doesn't remember and can't tell us how strong the grip was on his arm, but he lunged."

## 2. **Governing Legal Principles**

"In a criminal case, a jury verdict must be unanimous." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*); Cal. Const., art. I, § 16.) The jury must unanimously agree the defendant is guilty of a specific crime. (*Russo*, at p. 1132.) "[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.] [¶] This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' " (*Ibid*.)

A "unanimity instruction is required if there is evidence that more than one crime occurred, each of which could provide the basis for conviction under a single count." (*People v. Grimes* (2016) 1 Cal.5th 698, 727.) "[W]here the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree

9.

on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*Russo*, *supra*, 25 Cal.4th at p. 1132.)

In deciding whether to give a unanimity instruction, the court must determine whether: (1) the jurors may divide on two discrete crimes and not agree any particular crime was committed; or (2) the jurors may divide on the exact way the defendant is guilty of a single discrete crime. (*Russo*, *supra*, 25 Cal.4th at p. 1132.) Only in the former situation, not the latter, should the court give the instruction. (*Ibid*.) Furthermore, a "unanimity instruction is not required where the offenses are so closely connected to form a single transaction or where the offense itself consists of a continuous course of conduct." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 851 (*Thompson*).)

We review a claim of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) "In criminal cases, even absent a request, a trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence." (*People v. Booker* (2011) 51 Cal.4th 141, 179.) "Whether or not to give any particular instruction in any particular case entails the resolution of a mixed question of law and fact that … is … predominantly legal" and "should be examined without deference." (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

### 3. **Analysis**

Here, the jury was instructed its verdict must be unanimous by CALCRIM No. 3550. But neither party requested a unanimity instruction on the identity of the victim for the assault count and none was given.

We conclude no unanimity instruction was necessary because there is no question which act by Perez supports the verdict: his swing of a sharp metal weapon at Hernandez. Perez was speaking to Hernandez as he came toward the podium. As he approached Hernandez, Perez looked agitated and upset. Perez said to Hernandez "your rats have me twisted." When he was close enough, Perez grabbed Hernandez's arm and

10.

lunged at Hernandez with the weapon. Perez's attempted battery was only unsuccessful because Solano tackled Perez before he could strike Hernandez with the weapon.

We reject Perez's contention the prosecution argued multiple theories of assault and it was unclear whether the alleged assaultive act was Perez approaching the officers angrily, displaying the weapon, or grabbing Hernandez's arm. The prosecutor's discussion of Perez's individual acts is logically understood as laying out Perez's conduct leading up to the assault rather than an assertion these acts constituted assault. Review of the prosecutor's closing argument in its entirety shows his reliance on Perez's lunge at Hernandez with the weapon as the assaultive act. This comports with the prosecution's theory of the case as presented to the trial court when the information was amended. (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1455 [no unanimity instruction required where the prosecutor's argument elected what conduct amounted to the charge].) Defense counsel's closing argument also reflects an understanding this was the asserted assaultive act. Even if we accept Perez's claim that the prosecution presented multiple theories of the assault to the jury, the jury is not required to agree on the exact way Perez committed the offense. Furthermore, "[t]he unanimity instruction is not required when the acts are so closely connected in time as to form part of one transaction." (*People v. Crandell* (1998) 46 Cal.3d 833, 875, disapproved on another ground in *People v. Crayton* (2002) 28 Cal.4th 346, 364–365.) Despite Perez's attempt to parse his conduct into multiple independent acts, his conduct was part of a single discrete criminal event for which no unanimity instruction was required. (See e.g., *People v. Flores* (2007) 157 Cal.App.4th 216, 222–223 [no unanimity instruction required where the defendant shot vehicles and an apartment door when he repeatedly fired a gun in a manner suggesting he was firing at a moving target].)

We further reject Perez's claim the jury could have divided on whether Hernandez or Solano was the victim because the evidence demonstrated the sole victim was Hernandez. Solano came to stand next to Hernandez to provide coverage as Perez

11.

approached. He tackled Perez out of concern Perez would injure or stab Hernandez, not concern for himself. There was no evidence Perez directed his assaultive conduct toward Solano. There was therefore no evidentiary basis upon which the jury could have found Perez committed assault against Solano, but not Hernandez.

Perez contends only Solano saw the weapon and therefore, only Solano could have been threatened by its presence and assaulted with a deadly weapon. "[A]ssault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790.) To convict for assault with a deadly weapon the jury must find the defendant used a deadly weapon in the assault (*People v. Milward* (2011) 52 Cal.4th 580, 588), but whether the victim felt threatened by the weapon is not an element of the offense. (*People v. Griggs* (1989) 216 Cal.App.3d 734, 742 (*Griggs*) [the prosecution is not required to show the victim felt fear to prove assault].) The prosecution was not required to show Hernandez felt threatened by the weapon to prove Perez's guilt against the only named victim. Though only Solano saw the weapon, Perez lunged at Hernandez with the weapon, not Solano. That is sufficient.

Perez primarily relies on *McNeill* to argue there was an issue of whether Solano or Hernandez or both officers were the victim of assault because Perez was charged with assaulting both officers in the single assault count. As discussed above, there was no issue about which officer was the alleged victim because the information was amended to remove the reference to Solano. In *McNeill*, the defendant fired a series of rapid shots in the direction of four individuals and was charged with a single assault count against all four victims, but the jury was not given a unanimity instruction. (*McNeill*, *supra*, 112 Cal.App.3d at pp. 334–335.) The Court of Appeal reversed the single assault conviction upon concluding the jury may have differed in their individual verdicts as to the identity of the victim from amongst the four individuals. (*Id.* at pp. 335–336.)

12.

*McNeill* is thus inapposite because the amended information here charged Perez with a single count of assault against a single victim.[9]

Perez observes that neither the jury instructions nor the verdict form expressly required finding he assaulted a specific victim. The CALCRIM No. 875 instruction given to the jury outlining the elements of assault with a deadly weapon referred to "a person" and "someone," without identifying a specific victim. The verdict form for the assault charge contained a finding of guilt for violating section 245 without reference to a victim, though the form referred to the assault as "charged in … the information," which, as amended, only identified Hernandez as the victim.[10] The naming of a particular victim is not an element of assault with a deadly weapon. (*Griggs*, *supra*, 216 Cal.App.3d at p. 742.) However, the jury instruction's general reference to a person could create confusion if Perez had been charged with assault against more than one victim. For example, in *People v. Velasquez* (2012) 211 Cal.App.4th 1170, the defendant shot at a residence and was charged with five counts of assault with a firearm (§ 245, subd. (a)(2)), one count for each of the five people inside the residence. The jury was given CALCRIM No. 875 without specifically identifying any of the named victims. (*Velasquez*, at p. 1176.) This court concluded the jury could have convicted the defendant on all five assault counts although only one victim was in the area of the residence where shots were fired based on the instruction's general reference to the use of force against "a person." (*Id.* at p. 1177.) Because the jury may have convicted the defendant on all five counts based solely on his assault of one victim, we reversed the

---

[9] Because there was only one identified victim in the information, we need not address Perez's argument this case is like *McNeill* and unlike *People v. Carrera* (1989) 49 Cal.3d 291 [no unanimity instruction required where the defendant was charged with one robbery count against two victims where the jury could not have found the defendant robbed one victim and not the other victim].)

[10] We acknowledge that the record is unclear whether the jury was provided with a copy of the information.

13.

assault convictions on the other four victims. (*Ibid.*) No similar risk is present here because Perez was only charged with assaulting a single victim, Hernandez, and as discussed above, the evidence showed that only Hernandez was assaulted.

Perez argues the jury could have believed it must find he assaulted both officers based on parts of the prosecutor's argument. We disagree. Though the prosecutor referenced to plural "officers" and "them" at certain points during argument, his reliance on Perez's lunge at Hernandez with the weapon as the assaultive act properly indicated to the jury that Hernandez was the sole asserted victim. Given the prosecutor's focus on the lunge at Hernandez and the instruction's reference to a singular "person" and "someone," we are not persuaded there is a reasonable likelihood the jury believed both officers were alleged as victims. (*People v. Kelly* (1992) 1 Cal.4th 495, 526; see also *People v. Centeno* (2014) 60 Cal.4th 659, 676 [if the prosecutor's argument conflicts with the jury instructions, it is presumed the jury followed the latter].) Even if we accept Perez's assertion the jury believed it must find he assaulted both officers to convict him on the single assault charge, this would have increased rather than decreased the prosecution's burden. (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 639 [impossible to understand how error could be prejudicial where it increased the prosecution's evidentiary burden].) Moreover, if the jury believed a conviction required finding Perez assaulted both officers, implicit in its verdict is a finding he assaulted the only named victim, Hernandez. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1165 [no prejudicial error where the jury verdict would have been the same absent the error].)

Finally, we are convinced that, even assuming a unanimity instruction was required on the assault charge, any error in failing to give the instruction was harmless beyond a reasonable doubt.[11] "Where the record provides no rational basis, by way of

---

[11] There is a split of authority on whether the failure to give a unanimity instruction is subject to review under *Chapman v. California* (1967) 386 U.S. 18 or

14.

argument or evidence, for the jury to distinguish between the various acts and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless." (*Thompson*, *supra*, 36 Cal.App.4th at p. 853.) The failure to give a unanimity instruction is harmless where the jury's verdict reflects it rejected the only defense offered. (*People v. Diedrich* (1982) 31 Cal.3d 263, 283.) Perez presented the jury with a single defense by testifying he picked up the weapon outside his cell and intended only to turn it over to the officers. The jury necessarily rejected Perez's version of events by its verdict. (*Thompson*, at p. 853 [failure to give a unanimity instruction is harmless "[w]here the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence"].)[12]

## II. Instruction on Lesser Offense of Simple Assault

Perez argues the trial court prejudicially erred by failing to instruct the jury on simple assault as a lesser included offense of assault with a deadly weapon.

### A. Additional Background

The prosecutor initially requested the jury be instructed on simple assault (CALCRIM No. 915). Both parties had requested the jury be instructed on how to evaluate lesser included offenses (CALCRIM No. 3517). During the trial court's discussion with the parties about proposed jury instructions, the prosecutor withdrew his

---

*People v. Watson* (1956) 46 Cal.2d 818. (*People v. Smith* (2005) 132 Cal.App.4th 1537, 1545–1546; *People v. Matute* (2002) 103 Cal.App.4th 1437, 1448–1449.) Because we conclude any error was harmless under the more stringent *Chapman* standard, we need not and do not address the applicable standard. (*People v. Napoles* (2002) 104 Cal.App.4th 108, 119, fn. 8.)

[12] Perez's claim the verdict form's lack of an identified victim constitutes a structural error is meritless because this claim is premised on his misconception that the charging document named both officers as victims.

request for CALCRIM No. 915. Both sides withdrew their requests for CALCRIM No. 3517.

### B. Governing Legal Principles

"Under California law, trial courts must instruct the jury on lesser included offenses of the charged crime if substantial evidence supports the conclusion that the defendant committed the lesser included offense and not the greater offense." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 196.) "The prejudice arising from the failure to give such instructions is the risk that the jury ignored its instructions and convicted the defendant of an offense … for which the prosecution did not carry its burden. The jury might have been convinced that the defendant was guilty of some lesser included offense and, as a result, tempted to convict of a greater offense rather than acquit." (*Id.* at p. 200.)

The trial court has a sua sponte duty to instruct on a lesser included offense even where the defendant does not request or expressly objects to the instruction. (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*), disapproved on other grounds in *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.) "Such instructions are required when, but only when, a jury could reasonably conclude that the defendant committed the lesser offense but not the greater one." (*People v. Hardy* (2018) 5 Cal.5th 56, 98.) "Although instruction on a lesser included offense 'is not required when the evidence supporting such an instruction is weak' [citation] or based on speculation [citation], it is required when the lesser included offense is supported by ' "evidence that a reasonable jury could find persuasive." ' " (*People v. Steskal* (2021) 11 Cal.5th 332, 345.) We review de novo the trial court's failure to instruct on a lesser included offense. (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.)

### C. Analysis

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Assault with a deadly weapon is simply assault where the defendant used a deadly weapon. (*People v. McDaniel* (2008)

159 Cal.App.4th 736, 748.) There is no dispute that simple assault is a lesser included offense of assault with a deadly weapon. (*Id.* at p. 747; accord *People v. Rodriguez* (2018) 26 Cal.App.5th 890, 900.)[13] Perez could not commit the greater offense without also committing the lesser offense of simple assault. Therefore, the trial court had a duty to instruct on simple assault if there was substantial evidence upon which a reasonable trier of fact could find that Perez committed the lesser offense rather than the greater. (*Rodriguez*, at p. 899.)

Perez argues the jury could have found he committed simple assault based on his non-consensual touching of Hernandez when he grabbed Hernandez's arm. He further contends the evidence he simultaneously swung a weapon was minimal or insubstantial. Perez claims no testimony "unequivocally" informed the jury that any officer saw Perez swing a weapon at the officers.

Perez has failed to demonstrate he was guilty of the lesser offense of simple assault. Perez's grab of Hernandez's arm may not be considered in isolation because whether the evidence supported instruction on simple assault is based on an examination of the entire record, not by separating out Perez's individual acts. (*Breverman*, *supra*, 19 Cal.4th at p. 178.) We disagree there was minimal evidence Perez swung the weapon. Lopez testified Perez pulled Hernandez toward him and swung his left arm. Solano saw Perez reach with his left hand for something that "looked like a weapon" with "a shiny pointy tip," and tackled Perez "[a]s soon as [Perez] lunged." Perez admitted he had the weapon in his hand when he was tackled. While the testimony of a single witness is sufficient to support a conviction (*People v. Young* (2005) 34 Cal.4th 1149, 1181), Perez's guilt may be based on the accumulated testimony of multiple witnesses. The jury is required to consider all the evidence received throughout the entire trial in reaching its

---

[13] The People agree simple assault is a lesser included offense of assault with a deadly weapon but argue there was no substantial evidence Perez was guilty of the lesser offense and not the greater.

verdict and this jury was so instructed by CALCRIM No. 220. Considering the evidence in its entirety, there was compelling evidence Perez swung the weapon at Hernandez.

Perez further contends only Solano saw the weapon and the closest the weapon got was an arm's length away before he was tackled. He claims the jury could have concluded he did not have the present ability to apply force given Perez was in a wheelchair and the officers were standing.

Assault "requires an unlawful attempt to apply physical force and a present ability to apply such physical force." (*People v. Wright* (1996) 52 Cal.App.4th 203, 209.) The present ability element of assault "is satisfied when 'a defendant has attained the means and location to strike immediately.' " (*People v. Chance* (2008) 44 Cal.4th 1164, 1168.) Perez pulled Hernandez toward him with one hand and swung at Hernandez with the sharp metal weapon in the other hand. As discussed above, the attempted attack was unsuccessful only because Solano intervened by tackling Perez before he could strike Hernandez with the weapon. The use of a deadly weapon precludes a finding Perez was guilty only of simple assault. (*People v. Lesnick* (1987) 189 Cal.App.3d 637, 643 [a trial court has no duty to instruct on simple assault where the evidence was uncontroverted that the assailant used a deadly weapon].) While, as Perez asserts, the jury could have concluded Perez did not have the present ability to apply force due to his disability, such a finding would have absolved Perez of both simple and aggravated assault. "An instruction on a lesser included offense is not required 'when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime.' " (*People v. Campbell* (2020) 51 Cal.App.5th 463, 503.) Perez cites no authority for his implied assertion the weapon must come within a minimum distance of the victim. On the contrary, an aggravated assault conviction has been upheld where the defendant was holding a knife 10 to 15 feet away from the victim. (See, *People v. Nguyen* (2017) 12 Cal.App.5th 44, 48–49.) There is also no requirement the victim must have seen the weapon to prove assault with a deadly weapon and it is thus immaterial Hernandez did

not see the weapon before the assault.  Presumably, both parties recognized there was not substantial evidence showing Perez committed simple assault and accordingly, both withdrew their requests for the instruction on lesser offenses.  The evidence did not warrant instruction on the lesser offense of simple assault.

## III.    Prosecutor's Rebuttal Argument

Perez, who is Hispanic, claims for the first time on appeal his conviction must be reversed because the prosecutor's argument during rebuttal that Perez was accusing the sole white officer of beating him and not the non-white officers was an improper racially based argument in violation of Perez's state and federal constitutional rights, as well as California's RJA.  He further contends if this claim was forfeited that he received ineffective assistance of counsel.

### A. Additional Background

During the prosecutor's rebuttal argument, he stated in relevant part:

"I want to choose my words very carefully because we live in such a racially charged environment right now that I don't want to say anything that is either offensive to somebody or outside the parameters I'm about to comment on, but I would suggest to you that the stereotypical officer was focused on in this particular case, [Stringer] had next to nothing to do with the case.  He took some pictures because somebody told him to take some pictures and he went and transported him to another building.  But you saw him.  You saw him testify.  You saw his physical appearance, what he looks like.  And he becomes the boogeyman.  Well, why?  Again, why?  This is after the fact.  Why focus on him?  Why focus on the officer that probably had the least significant thing in this particular case?  Why would [Perez] focus on the officer that has one of the most insignificant roles?  And even if what he had done was true, it wouldn't, it wouldn't affect your decision or shouldn't affect your decision because it -- these violations of the law had already taken place.  And I think I was just kind of -- I don't know if I have this up here on the screen.  Again, sympathy for the defendant.  It's kind of built in.  I don't mean that in a disrespectful way.  He's got mobility vest on the back of his wheel chair you've periodically seen.  We have sympathy.  And I tell you it's just human nature.  And you know, in fact, he also has, I think the record does reflect he has had one leg that is amputated or at least -- he is in his wheelchair for a reason.  And just

19.

as a human being, that engenders sympathy. But do you think that's it? Or do you think that's placed the department of corrections and Pleasant Valley State Prison in a particular negative light. Because you have to be so angry with the way these poor prisoners are treated that clearly everybody must be involved in this. I don't really know of any other reason to pick on an officer that had so much, so little to do with the case. And if, in fact, it had happened, don't you think that the defendant at some point in time would have filed, you remember, the 602s? Hasn't filed a 602 against any of these. And here's, here's the -- I'm going to make sure that I'm fair on this, because the argument that would come back is well, he's, you know, he's afraid that if he reports them at the prison -- he's testified to you all. He's testified in front of the whole time CDC, I'm pointing right now for the record to Investigator Tamez, it's not like his calling out this egregious behavior is not going to be known. But it's so much easier to wait to not file anything so that this can be basically a sandbag and then jump up and say oh, to 12 people from the community who may or may not be familiar with how things are in prison, to say oh, my God, I was beaten by this baldheaded white man after the fact when it has nothing to do with the underlying cases.

[…]

I want you to think about his testimony. I'm not suggesting that you should believe it. I'm suggesting that you should sort of look at the facts as they were presented in this case and then look at his testimony and think maybe why he testified the way he did."

Defense counsel did not object to this argument or file a motion with the trial court asserting an RJA claim.

### B. Constitutional Claims

Perez argues the prosecutor predicated his argument for finding guilt based on the races of the white officer and Perez, and this argument rendered his trial unconstitutional and illegal under the state and federal constitutions.

"A prosecutor's conduct violates the federal Constitution when it ' "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." ' [Citation.] 'Conduct that does not render a trial fundamentally unfair is error under state law only when it involves " ' "the use of deceptive or reprehensible methods to attempt to

20.

persuade either the court or the jury." ' " ' [Citations.] When a misconduct claim 'focuses on the prosecutor's comments to the jury, we determine whether there was a reasonable likelihood that the jury construed or applied any of the remarks in an objectionable fashion.' " (*People v. Nadey* (2024) 16 Cal.5th 102, 156.)

"Prosecutorial argument that includes racial references appealing to or likely to incite racial prejudice violates the due process and equal protection guarantees of the Fourteenth Amendment to the federal Constitution. [Citations.] Because racial prejudice can strongly compromise a juror's impartiality [citations], even neutral, nonderogatory references to race are improper absent compelling justification." (*People v. Cudjo* (1993) 6 Cal.4th 585, 625–626 (*Cudjo*); *McCleskey v. Kemp* (1987) 481 U.S. 287, 309, fn. 20 ["The Constitution prohibits racially based prosecutorial arguments."].)

Generally, a defendant may not complain on appeal of prosecutorial misconduct unless the defendant made a timely objection and requested an admonition. (*People v. Foster* (2010) 50 Cal.4th 1301, 1350.) A defendant will be excused from making an objection or requesting an admonition if either would be futile. (*Ibid.*) A statement may be "so prejudicial that an admonition by the trial court could not have cured the harm." (*Cudjo*, *supra*, 6 Cal.4th at p. 624.)

Perez did not object to the prosecutor's argument that Perez was accusing the only white officer of beating him to gain the jury's sympathy. Nothing in the record indicates an objection to this argument would have been futile. A timely objection would have given the trial court the opportunity to admonish the jury to disregard this argument. The prosecutor's racial reference was not so prejudicial that an admonition could not have cured the harm. Perez's failure to object forfeits the claim on appeal.

Perez's attempt to analogize the circumstances here to *Buck v. Davis* (2017) 580 U.S. 100 (*Buck*) is inapt. In *Buck*, defense counsel presented evidence from a psychological expert who evaluated and testified about Buck's future dangerousness. The expert opined that Buck had an increased probability of posing a danger in the future

21.

because he is Black.  (*Id.* at p. 107.)  The United States Supreme Court concluded defense counsel provided Buck with ineffective assistance of counsel and reversed the Fifth Circuit Court's denial of a certificate of appealability.  (*Id.* at pp. 105, 119.)  The court explained that "[r]elying on race to impose a criminal sanction 'poisons public confidence' in the judicial process [and] injures not just the defendant, but 'the law as an institution, ... the community at large, and ... the democratic ideal reflected in the processes of our courts.' "  (*Id.* at p. 124.)  Here, one party, the prosecution, argued the other was trying to gain the jury's sympathy by invoking race.  Neither side presented evidence purporting to show Perez's behavior was predetermined by his race.  *Buck* is also distinguishable because the offending evidence in that case was put forth by the defendant's own lawyer, which the court surmised could compound its impact on the jury.  (*Id.* at p. 122.)

In *People v. Gomez* (2018) 6 Cal.5th 243, also relied on by Perez, the defendant claimed the admission of evidence about two jail guards' ethnicities allowed the jury to improperly consider race at the sentencing phase.  The prosecutor argued the defendant had shown violence toward people of all races including his own race, like the two Mexican-American guards.  (*Id.* at p. 310.)  Our Supreme Court concluded the admission of evidence about the guards' ethnicities and the prosecutor's argument about it was improper.  (*Id.* at p. 311.)  While the *Gomez* court found no justification for the prosecutor's argument, the court nonetheless concluded admission of the evidence was not prejudicial, in part because the prosecutor's racial reference was a " 'brief and isolated remark.' "  (*Ibid.*)

Though we discern no *compelling* justification for the prosecutor's racial reference during rebuttal, the prosecutor's comments were not so inflammatory that Perez's trial was rendered fundamentally unfair, nor did the prosecutor engage in deceptive or reprehensible methods.  As in *Gomez,* the prosecutor's comments were brief and isolated as there was no other discussion of race during his argument.  The circumstances here are

22.

similar to *Cudjo*, wherein the prosecutor urged the jury to reject the defendant's testimony that the victim consented to sexual intercourse, questioning why a " 'happily married mother of three … would have intercourse with a strange man—frankly any man—a black man…' " with her 5-year-old in the house.  (*Cudjo*, *supra*, 6 Cal.4th at p. 625.)  The *Cudjo* court found no justification for the prosecutor's racial reference but observed the "reference to race occurred in the course of an argument listing factors that undermined the credibility of defendant's testimony."  (*Id.* at p. 626.)  Here, the prosecutor argued Perez had accused the sole white officer, Stringer, of beating him in an attempt to incur sympathy from the jury by suggesting the beating was race-related.  The prosecutor did not appeal to the jury's racial prejudices, but rather argued that Perez was suggesting to the jury the alleged beating reflected Stringer's racial prejudice.  Like in *Cudjo*, the prosecutor's brief comments about race were directed at the credibility of Perez's version of events and "there was no continued effort by the prosecutor to call attention to [Perez's] race or to prejudice the jury against him on account of race."  (*Ibid*.)  At no point did the prosecutor suggest that Perez was guilty or not credible because of his race.  The jury was also expressly instructed not to be biased against Perez, or any other party based on "race or ethnicity" by CALCRIM No. 200.  We cannot say the prosecutor's brief remarks constituted misconduct of constitutional proportions.

## C.  California's Racial Justice Act

In 2020, the Legislature enacted the RJA with the express intent "to eliminate racial bias from California's criminal justice system because racism in any form or amount, at any stage of a criminal trial, is intolerable, inimical to a fair criminal justice system, is a miscarriage of justice under Article VI of the California Constitution, and violates the laws and Constitution of the State of California.  Implicit bias, although often unintentional and unconscious, may inject racism and unfairness into proceedings similar to intentional bias."  (Stats. 2020, ch. 317, § 2, subd. (i).)  The Legislature's intent was

not to punish implicit bias, "but rather to remedy the harm to the defendant's case and to the integrity of the judicial system." (*Ibid.*)

Effective January 1, 2021, the RJA provides that the "state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) The RJA specifies four categories which, if proven by a preponderance of the evidence, establish a violation of the RJA. (§ 745, subd. (a)(1)–(4).) This includes, as relevant here, where "[d]uring the defendant's trial, in court and during the proceedings … an attorney in the case … used racially discriminatory language about the defendant's race, ethnicity, or national origin, or otherwise exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin, whether or not purposeful." (§ 745, subd. (a)(2).) This does not apply, however, "if the person speaking is relating language used by another that is relevant to the case or if the person speaking is giving a racially neutral and unbiased physical description of the suspect." (*Ibid.*) Section 745 defines "[r]acially discriminatory language" as "language that, to an objective observer, explicitly or implicitly appeals to racial bias, including, but not limited to, racially charged or racially coded language, language that compares the defendant to an animal, or language that references the defendant's physical appearance, culture, ethnicity, or national origin. Evidence that particular words or images are used exclusively or disproportionately in cases where the defendant is of a specific race, ethnicity, or national origin is relevant to determining whether language is discriminatory." (§ 745, subd. (h)(4).)

As originally enacted, a defendant seeking relief under the RJA could file a motion in the trial court or, if judgment has been imposed, "file a petition for writ of habeas corpus or a motion under Section 1473.7 in a court of competent jurisdiction, alleging a violation of subdivision (a)." (Former § 745, subd. (b).) Effective January 1, 2024, Assembly Bill No. 1118 (2023–2024 Reg. Sess.) (AB 1118) amended section 745, subdivision (b) to permit a defendant to raise an RJA claim on direct appeal. (Stats.

2023, ch. 464, § 1.) Section 745, subdivision (b) as amended provides in relevant part: "For claims based on the trial record, a defendant may raise a claim alleging a violation of subdivision (a) on direct appeal from the conviction or sentence. The defendant may also move to stay the appeal and request remand to the superior court to file a motion pursuant to this section."

In *People v. Lashon* (2024) 98 Cal.App.5th 804 (*Lashon*), the First District Court of Appeal concluded that in the absence of language "indicating a section 745 claim could be presented on direct appeal *for the first time*," "review of a section 745 claim, like any other appellate claim, is subject to the general appellate rules of preservation and forfeiture of claims that could have been but were not made in the trial court." (*Lashon*, at p. 812.) The court found support for this conclusion in other provisions of section 745 outlining how to raise an RJA claim in the trial court[14] and the legislative history of AB 1118. (*Lashon*, at pp. 812–815.) The court held that "taking into account the purpose of section 745 – to swiftly and effectively address racial bias as soon as practical upon a defendant learning of an alleged violation — and 'the substantial state interest in protecting the integrity of the process from improper "sandbagging" by a defendant' [citation] along with the language of the statute and its legislative history, we conclude a defendant may be found to have forfeited a section 745 claim of racial bias made for the first time on direct appeal in the absence of a showing that an exception to the forfeiture doctrine applies." (*Lashon*, at p. 815.)

Several Courts of Appeal, including this one, have agreed with the reasoning of *Lashon* and held that an RJA claim a defendant could have raised below is subject to

[14] Section 745, subdivision (c) states in pertinent part: "If a motion is filed in the trial court and the defendant makes a prima facie showing of a violation of subdivision (a), the trial court shall hold a hearing. A motion made at trial shall be made as soon as practicable upon the defendant learning of the alleged violation. A motion that is not timely may be deemed waived, in the discretion of the court."

25.

forfeiture absent an applicable exception.  (*People v. Singh* (2024) 103 Cal.App.5th 76, 113–115 (*Singh*); *People v. Corbi* (2024) 106 Cal.App.5th 25, 39–42; *People v. Quintero* (2024) 107 Cal.App.5th 1060, 1077.)

Relying on *Lashon* and *Singh*, the People argue Perez forfeited his RJA claim by failing to raise it before the trial court.  Perez acknowledges his counsel did not object to the prosecutor's rhetoric, but claims two exceptions to forfeiture apply:  (1) this is a pure question of law on undisputed facts; and (2) the matter implicates weighty concerns involving the public interest and administration of justice.

There is an exception to the rule of forfeiture when a defendant raises constitutional claims on appeal that involve pure questions of law that can be resolved without reference to the record developed in the trial court.  (*In re Sheena K.* (2007) 40 Cal.4th 875, 889; *People v. Welch* (1993) 5 Cal.4th 228, 235.)  Perez claims no additional factual record is needed because the trial record, on its face, shows the prosecutor illegally and unconstitutionally invoked race to discredit him.  We disagree.  Determining whether the prosecutor used "racially discriminatory language" during the trial proceedings "necessarily requires reference to and consideration of the circumstances of the case and record below."  (*Singh*, *supra*, 103 Cal.App.5th at p. 116.)  As discussed above, the prosecutor did not argue Perez was not credible or prone to crime because of his race, nor were the prosecutor's remarks so inflammatory that a curative admonition would have been futile.  If Perez had raised his RJA claim below, the trial court could have admonished the jury to disregard the prosecutor's allegedly improper race-based remarks.  (*Ibid.* ["it would not be procedurally efficient, nor would it conserve judicial resources, to find an exception to the forfeiture doctrine" where the trial court could have remedied the alleged RJA claim had it been raised].)

We are not persuaded this case presents circumstances warranting an exception from general forfeiture rules based on the public interest and due administration of justice.  Presumably any number of RJA claims implicate the public's interest in the

administration of justice without racial bias and yet the Legislature chose not to exempt such claims from forfeiture. Under the circumstances here, we conclude Perez's claim must be deemed forfeited. We decline Perez's invitation to exercise our discretion to reach the issue despite its forfeiture. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on another ground as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962 [the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue].)

### D. Ineffective Assistance of Counsel

If Perez's RJA claim was not preserved for appeal, Perez contends he received ineffective assistance of counsel. Perez argues defense counsel's failure to object based on the RJA to the prosecutor's rase-based attack on his credibility was objectively unreasonable. He further claims he has demonstrated prejudice by counsel's failure to object and his conviction must be reversed because it was obtained in violation of the RJA.[15]

To prevail on an ineffective assistance of counsel claim, a defendant must satisfy both prongs under *Strickland v. Washington* (1984) 466 U.S. 668. First, the defendant must show that counsel's performance was deficient by showing "that counsel's representation fell below an objective standard of reasonableness." (*Id.* at p. 688.) Second, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.) If the defendant fails to satisfy one prong, his ineffective assistance of counsel claim must fail. (*Id.* at p. 697.)

---

[15] Because Perez's claim of ineffective assistance of counsel is grounded solely on the RJA, our analysis is restricted to counsel's failure to claim an RJA violation.

"On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "A claim of ineffective assistance of counsel based on a trial attorney's failure to make a motion or objection must demonstrate not only the absence of a tactical reason for the omission [citation], but also that the motion or objection would have been meritorious, if the defendant is to bear his burden of demonstrating that it is reasonably probable that absent the omission a determination more favorable to defendant would have resulted." (*People v. Mattson* (1990) 50 Cal.3d 826, 876, superseded by statute on another ground as stated in *People v. Bolin* (1998) 18 Cal.4th 297, 315, fn. 2.)

Perez contends there could be no tactical reason for defense counsel's failure to object to the prosecutor's rebuttal argument because the RJA prohibits any trial actor from exhibiting racial bias toward the defendant and cites *Buck* again to argue no competent defense attorney would condone such an argument about their client. We have already concluded the circumstances in *Buck* are distinguishable. The prosecutor's remarks here are not comparable to the defendant's own attorney submitting evidence purporting to show the defendant's propensity for violence based on his race. As the Supreme Court observed, the defense counsel's conduct in *Buck* was especially injurious to the defendant because the jury "may reasonably be expected to evaluate the government's evidence and arguments in light of its motivations. When a defendant's own lawyer puts in the offending evidence, it is in the nature of an admission against interest, more likely to be taken at face value." (*Buck*, *supra*, 580 U.S. at p. 122.)

Moreover, the record does not support Perez's presumption the trial court would have concluded the prosecutor's remarks violated the RJA. To prove an RJA claim,

Perez must have shown by a preponderance of the evidence that the prosecutor "exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin." (§ 745, subd. (a)(1).) This court observed in *Singh* that "[s]ection 745 does not define the terms 'bias' or 'animus,' but specifies that the moving party is not required to prove 'intentional discrimination.' (*Id.*, subd. (c)(2).) The legislative findings to the [RJA] include a nonexhaustive list of potentially violative statements or conduct, including 'racially incendiary or racially coded language, images, and racial stereotypes,' and suggestion that people of a certain race are 'predisposed' to criminal conduct." (*Singh*, *supra*, 103 Cal.App.5th at p. 119.) The prosecutor did not specifically comment on Perez's race, nor did he expressly or impliedly suggest Perez was not credible or predisposed to criminal behavior because of his race. The prosecutor did not use racially incendiary or coded language or employ racial stereotypes. As in *Singh*, "this is not a situation in which we can conclude, if defense counsel objected on the basis of the [RJA], the trial court necessarily would have concluded the state sought or obtained a criminal conviction or sentence on the basis of race, ethnicity, or national origin." (*Ibid.*)[16] Perez's counsel could have reasonably concluded an RJA claim based on the prosecutor's rebuttal argument would not be meritorious, and therefore, chose not to pursue one. (*People v. Butler* (1995) 36 Cal.App.4th 455, 461–462 [counsel's failure to file motion is not prejudicial where the motion was without merit and would not have been granted];

[16] The facts in *People v. Simmons* (2023) 96 Cal.App.5th 323, relied on by Perez, are distinguishable. In that case, the prosecutor engaged in a "lengthy and disjointed cross-examination" of the defendant during which she "mentioned on many occasions that appellant is a 'light-skinned' Black man and asked him to compare his skin tone to that of other people mentioned in his testimony." (*Id.* at p. 330.) The prosecutor then during rebuttal argument "equate[d the defendant's] skin tone and 'ethnic presentation' with deception, implying that he was not a credible witness because the color of his skin fooled women and confused strangers." (*Id.* at p. 336.) On appeal, the court concluded the "suggestion that a witness is lying based on nothing more than his complexion is as baseless as it is offensive" and the RJA "targets precisely this sort of racially based language." (*Ibid.*) There was no similar language or conduct by the prosecutor here.

*People v. Memro* (1995) 11 Cal.4th 786, 834, overruled on another ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2 [counsel is not required to file a motion that would be futile].) Perez's ineffective assistance of counsel claim thus fails.

## IV.	Cumulative Error

Lastly, Perez argues even if this court finds each individual error harmless, the cumulative effect of the errors nevertheless demonstrates a miscarriage of justice occurred.

"Cumulative error is present when the combined effect of the trial court's errors is prejudicial or harmful to the defendant." (*People v. Capers* (2019) 7 Cal.5th 989, 1017.) "The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial.' " (*People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.) We have rejected Perez's individual claims of error or determined any error was not prejudicial. Therefore, "there was no prejudicial error to accumulate." (*People v. Hensley* (2014) 59 Cal.4th 788, 818.) We are satisfied based on our review of the record Perez received a fair trial. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009 [a criminal defendant is "entitled to a fair trial but not a perfect one"].)

## DISPOSITION

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:

PEÑA, Acting P. J.

SMITH, J.